JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MERELINE MCRAE, *individually and on behalf of all others similarly situated*

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert P. Cocco, P.C.,
1500 Walnut St., Ste.900, Philadelphia, PA 19102
215-351-0200

## DEFENDANTS

SELECT PORTFOLIO SERVICING, INC.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
    *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☒ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☒ 480 Consumer Credit |
| of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 15 U.S.C.§1692 et seq.

Brief description of cause: inaccurate credit reporting dispute

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE   2/15/18

SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| MERELINE MCRAE, *individually and on behalf of all others* *similarly situated* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. |
| SELECT PORTFOLIO SERVICING, INC. et al. | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)   Habeas Corpus -- Cases brought under 28 U.S.C. §2241
through §2255.                                                                                  (     )

(b)   Social Security -- Cases requesting review of a decision of the Secretary of Health and Human
Services denying plaintiff Social Security Benefits.                               (     )

(c)   Arbitration -- Cases required to be designated for
arbitration under Local Civil Rule 8.                                                  (     )

(d)   Asbestos -- Cases involving claims for personal
injury or property damage from exposure to asbestos.                        (     )

(e)   Special Management -- Cases that do not fall into
tracks (a) through (d) that are commonly referred to
as complex and that need special or intense management
by the court. (See reverse side of this form for a
detailed explanation of special management cases.)                           ( X )

(f)   Standard Management -- Cases that do not fall into any
one of the other tracks.                                                                 (     )

_2/15/18_
(Date)

_____
Attorney-at-law

  ROBERT P. COCCO, ESQ.          .
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA -- DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __7439 Sommers Road, Philadelphia, PA 19138__

Address of Defendant: __c/o CT Corporation System, 116 Pine St., Ste. 320, Harrisburg, PA 17101.__

Place of Accident, Incident or Transaction: __7439 Sommers Road, Philadelphia, PA 19138.__
*(Use Reverse Side For Additional Space)*

Does this case involve multidistrict litigation possibilities?         Yes ☐   No ☑

*RELATED CASE, IF ANY:*         None.

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

Yes ☐   No ☑

2. Does this case involve the same issue of factor grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

Yes ☐   No ☑

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
(Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability - Asbestos
9. ☐ All other Diversity Cases

**ARBITRATION CERTIFICATION**
*(Check appropriate Category)*

I, __Robert P. Cocco,__ counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: __2/15/18__        _____        __61907__
                        Attorney-at-Law                Attorney I. D.#

**NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38**

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __2/15/18__        _____        __61907__
                        Attorney-at-Law                Attorney I.D.#

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERELINE MCRAE,<br>                    Plaintiff, | CIVIL ACTION |
| v. | NO. |
| SELECT PORTFOLIO SERVICING, INC.; | |
| U.S. BANK NATIONAL ASSOCIATION, as<br>trustee, for Springleaf Mortgage Loan Trust<br>2013-2 Mortgage-Backed Notes, Series 2013-2 | **JURY TRIAL DEMANDED** |
| Defendants. | |

## **COMPLAINT – CLASS ACTION**

### I.    INTRODUCTION

1.      Plaintiff brings this class action against defendants to obtain relief for herself and the class she proposes to represent for improper mortgage servicing practices.

2.      Plaintiff alleges violation of the federal Truth in Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA"), Real Estate Procedures Settlement Act, 12 U.S.C.A. §2605(f)(1) and 12 C.F.R. §1024.41(a) as authorized by 12 U.S.C.A. §2605(k)(1)(E) ("RESPA"), breach of contract, and common law unjust enrichment.

3.      TILA was passed with the specific congressional finding:

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C.A. § 1601.

4.    In the case of mortgage servicing, TILA further provides that:

> A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.

15 U.S.C.A. § 1639g.

5.    SPS[1] was previously sued and subject to government enforcement actions for adding unauthorized inspection fees to mortgage borrower accounts and based upon these prior suits it has actual knowledge and appreciation that its practices described herein are unfair, deceptive, or otherwise unjustified but has acted contrary to that knowledge. *See e.g.* In Re: Fairbanks Capital Corp., a licensed mortgage lender, ML 0300349, Respondent, 2004 WL 6028714; Laveta A. Glass and Rochelle J. Wilson, Plaintiffs, v. FAIRBANKS CAPITAL CORP., Defendant., 2002 WL 32966793 (N.D.Ill.); and *Chatman v. Fairbanks Capital Corp.*, No. 02 C 665, 2002 WL 1338492 (N.D. Ill. June 18, 2002).

## II.    JURISDICTION AND VENUE

6.    This Court has jurisdiction pursuant to 15 U.S.C. §§1640 (TILA) 28 U.S.C.A. § 1331 since certain of the claims asserted herein arise under the laws of the United States. Further, the Court may elect to retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.A. § 1367 since those claims are so related to the federal claims asserted herein that they form part of the same case and controversy.

7.    Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391 because a substantial portion of the events or omissions giving rise to the claims before the Court occurred in this District.

---

[1]    SPS was previously known as Fairbanks Capital Corporation.

## III.    PARTIES

8.      Mereline McRae is a natural person, who resides at 7439 Sommers Road, Philadelphia, PA 19138 ("the Property").

9.      Defendant SELECT PORTFOLIO SERVICING, INC. ("SPS") is a nationally chartered banking association headquartered in Utah, with an agent for service of civil process being CT Corporation System, 116 Pine St., Ste. 320, Harrisburg, PA 17101.

10.      Defendant U.S. BANK NATIONAL ASSOCIATION IS THE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-2 MORTGAGE-BACKED NOTES, SERIES 2013-2 ("Springleaf 2013-2").    Its offices are located at 200 South 6th Street, Minneapolis, MN 55402.

11.      SPS is the authorized agent for Springleaf 2013-2 and all acts described herein were on its behalf and for its benefit.

## IV.    FACTS

12.      Plaintiff purchased the Property on April 1973 and has lived there ever since.

13.      In February 2010, plaintiff entered into a Fannie Mae HAMP sponsored loan modification agreement with SPS ("modification").

14.      Under the terms of the Fannie Mae HAMP program, plaintiff received from 2011 through 2013 a $1,000 borrower incentive reduction of principal.

15.      In March 2015, plaintiff changed her Homeowners insurance policy to Fair Plan due to cheaper policy premium of $673.00.

16.      Despite the foregoing, in December 2015 SPS disbursed $1,756 to plaintiff's prior homeowner's insurer, Farmers, in connection with her loan account and then told plaintiff to procure a refund from Farmers.

17.     In December 2015, plaintiff received a $5,000 borrower incentive reduction of principal under the Fannie Mae HAMP program.

18.     In December 2015, SPS sent plaintiff a "Recast" letter lowering her principal and interest payment from $542.65 to $453.59.

19.     In January 2016 SPS sent plaintiff an escrow analysis letter and monthly statements which continued to show a $542.65 P&I principal and interest payment due in contradiction to the aforesaid "Recast" letter from SPS.

20.     In April 2017, SPS sent plaintiff a pre-Foreclosure Notice inaccurately alleging a three (3) month arrears of $542.65 P&I principal and interest each month.

21.     From December 2015 through June 2017, plaintiff assessed to plaintiff's loan account four (4) inspection fees of $15.00 each and a $375 appraisal fee.

22.     In June 2017, plaintiff sent SPS a Request for Information ("RFI") regarding whether SPS ever believed the property to then or in the past be vacant and/or not in good condition as well as requesting any other basis to assess the aforesaid property inspection fees and appraisal charge against her account.

23.     On or about July 21, 2017, SPS responded that it had "…no reason to believe the home is vacant or abandoned" after review of the account.

24.     In August 2017, plaintiff sent SPS a Notice of Error ("NOE") letter under RESPA requesting correction of the aforesaid property inspection fees and appraisal charge because there was no factual basis for SPS to believe the property was vacant and/or not in good condition.

25.     Pursuant to paragraph 9 of the Mortgage, SPS is entitled to charge plaintiff's loan account for funds to protect and assess the value of the property if:

       a.    plaintiff breaches the covenants and agreements in the Note and Mortgage,

- 4 -

b.  there is a legal proceeding involving the property that may significantly affect the SPS and the loan owner's interests in the property, or

c.  plaintiff has abandoned the property.

26.    None of the foregoing pretexts for SPS' assessment of the aforesaid property inspection fees and appraisal charge existed before or after SPS' assessment.  SPS therefore, had no bona fide or contractual basis to assess plaintiff's loan account for property inspection fees.

27.    SPS never responded or took corrective action in response to plaintiff's August 2017 NOE.

28.    On or about December 19, 2017, plaintiff sent SPS a second RFI asking it to explain why the appraisal was conducted and why her account was being charged the $375 fee. SPS' January 11, 2018 response regarding the $375.00 fee, devoid of supporting facts, was, "Fees are assessed according to the requirements found in the Note and state law."

29.    SPS continues to assess the inspection fees and appraisal fees to Plaintiff without the right to do so since she has not (i) breached the covenants and agreements in the Note and Mortgage; (ii) there is no legal proceeding involving the property that may significantly affect the SPS and the loan owner's interests in the property, or (iii) the plaintiff has not abandoned the property.  These assessed sums are damages and losses wrongly incurred by the Plaintiff.

30.    Plaintiff has suffered severe emotional distress and anxiety as a result of SPS's inaccurate accounting of her loan and refusal to correct its accounting errors placing plaintiff in imminent fear of foreclosure for nearly a year inducing worry, anxiety, frustration, and nervousness.

**V.    CLASS ALLEGATIONS**

31.     This action is properly brought on behalf of two classes, pursuant to Fed. R. Civ.P. 23(a) and 23(b). Named Plaintiff proposes the **Inspection Class** be defined as follows:

> Those persons in the Commonwealth of Pennsylvania for whom SPS has acted as a mortgage servicer on behalf of another, including Springleaf 2013-2, within the three (3) years before the commencement of this action, and SPS has charged their mortgage accounts with property inspection fees and costs but (i) there had been no breach of the covenants and agreements in the Note and Mortgage entered into by the person and the person was  were current on his/her mortgage accounts; (ii) there was no legal proceeding involving the person's property that affected SPS' and the loan owner's interests in the property, or (iii) the property was not abandoned.

32.     Named Plaintiff proposes the **TILA Payoff Class** be defined as follows.

> Those persons whom SPS on behalf of Springleaf 2013-2 provided a Payoff Statement in the one (1) year before the commencement of this action which claimed inspection fees and costs were due on the account but (i) there had been no breach of the covenants and agreements in the Note and Mortgage entered into by the person and the person was  were current on his/her mortgage accounts; (ii) there was no legal proceeding involving the person's property that affected SPS' and the loan owner's interests in the property, or (iii) the property was not abandoned.

33.     The members of the **Inspection Class** and **TILA Payoff Class** are capable of being identified without difficult managerial or administrative problems. SPS maintains electronic records that tracks information about borrowers, their loans and any correspondence sent to borrowers so it is able to identify particular categories of borrowers from its electronic systems. Springleaf 2013-2 also requires SPS (and SPS utilizes) standard forms and procedures related to the payoff statements sent to borrowers.

34.     The **Inspection Class** and **TILA Payoff Class** members are sufficiently numerous that individual joinder of all members is impractical.  According to public records, SPS is the servicer for thousands of mortgage loans, including loans owned by Springleaf 2013-

2, throughout the United States in the last three years preceding the commencement of this action.

35.    There are questions of law and fact common to the **Inspection Class** and **TILA Payoff Class** which predominate over any questions affecting only individual members of the **Inspection Class** and **TILA Payoff Class** and, in fact, the wrongs alleged against SPS and Springleaf 2013-2 by the **Inspection Class** and **TILA Payoff Class** members and the remedies sought by **Inspection Class** and **Payoff Class** members against SPS and Springleaf 2013-2 are identical, the only difference being the exact monetary sum to which each **Inspection Class** and **TILA Payoff Class** member is entitled to receive from SPS and/or Springleaf 2013-2.

36.    The common issues related to the **Inspection Class** members include, but are certainly not limited to:

  i. Whether SPS is entitled to demand property preservation and/or inspection fees on the mortgage accounts of the **Inspection Class** when the Named Plaintiff and **Inspection Class** Members had not (i) breached the covenants and agreements in the Note and Mortgage and were current on their mortgage accounts; (ii) there was no legal proceeding involving the property that may significantly affect the SPS and the loan owner's interests in the property, or (iii) the property was not abandoned by the Named Plaintiff and **Inspection Class** members;

  ii. Whether SPS threatened or took actions against the **Inspection Class** members, including actions under the color of law or which were otherwise unfair and deceptive, that it had no legal or equitable right to take;

  iii. Whether SPS acted unfairly and deceptive in regards to the **Inspection Class** members by knowingly misrepresenting that it was entitled to assess property

preservation fees against the mortgage accounts of the of the **Inspection Class** members even when (i) there had been no breach of the covenants and agreements in the Note and Mortgage and the Named Plaintiff and Inspection Class members were current on their mortgage accounts; (ii) there was no legal proceeding involving the property that may significantly affect the SPS and the loan owner's interests in the property, or (iii) the property was not abandoned by the Named Plaintiff and **Inspection Class** members;

iv.     Whether SPS merely booked entries related to unauthorized inspection fees in favor of itself which do not actually represent actual payments or liabilities from the Named Plaintiff and Inspection Class members;

v.      What is the sum of fees and charges collected by SPS from the Named Plaintiff and Inspection Class members during the class period before the commencement of this action; and

vi.     Whether SPS profited from the assessment of improper inspection fees against the accounts of the Named Plaintiff and the **Inspection Class** members and what sum of profits it realized.

37.     The common issues related to the **TILA Payoff Class** include, but are certainly not limited to:

i.      Whether SPS' inclusion of property/inspection preservation fees against the mortgage accounts on payoff statements made by it on behalf of Springleaf 2013-2 and others made the **TILA Payoff Class** members' payoff statements inaccurate;

ii.    Whether SPS and/or Springleaf 2013-2 may be liable to **TILA Payoff Class** members pursuant to 15 U.S.C.A. § 1639g by providing inaccurate payoff statements which included sums claimed to be due from the **TILA Payoff Class** members for property inspection fees which are not permitted;

iii.   Whether SPS and/or Springleaf 2013-2 provided the **Payoff Class** members with TILA disclosures as required by 12 C.F.R. § 226.18 when SPS added sums due for property preservation/inspection fees to the **TILA Payoff Class** member accounts;

iv.    Whether SPS may be held jointly liable under TILA, i.e. 15 U.S.C.A. § 1640(a), along with Springleaf 2013-2 or whether Springleaf 2013-2 is solely liable to the **TILA Payoff Class** members under TILA; and

v.     What is the net worth of SPS and Springleaf 2013-2 for the purpose of determining statutory damages owed to the **TILA Payoff Class** members.

38.    Named Plaintiff's legal and equitable claims are typical and the same or identical for each of the member of the **Inspection Class** and **TILA Payoff Class** and will be based on the same legal and factual theories identified *supra*.

39.    SPS' and Springleaf 2013-2's defenses (which defenses are denied) would be typical and the same or identical for each of the member of the **Inspection Class** and **TILA Payoff Class** and will be based on the same legal and factual theories.

40.    The Named Plaintiff will also fairly and adequately represent and protect the interests of the **Inspection Class** and **TILA Payoff Class** members. Named Plaintiff has retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices. Named Plaintiff does not have any interests which

might cause her not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the **Inspection Class** and **TILA Payoff Class**.

41.      Certification of the **Inspection Class** and **TILA Payoff Class** under Fed. R. Civ.P. 23(a) and 23(b) for the injunctive and declaratory relief sought and for the damages claims in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of claims by the **Inspection Class** and **TILA Payoff Class** members, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

42.      The only individual questions concern the identification of the **Inspection Class** and **TILA Payoff Class** members who are entitled to any sums and profits that SPS is ordered to disgorge as the fruit of its unlawful activities or share in any statutory and actual damages permitted by law against SPS and/or Springleaf 2013-2. This information can be determined by a ministerial examination of the Defendants' business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

43.      Plaintiff's claims are typical of the claims of the **Inspection Class** and **TILA Payoff Class** members.

44.      Plaintiff will fairly and adequately protect the interests of all **Inspection Class** and **TILA Payoff Class** members in the prosecution of this action. The Named Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the **Inspection Class** and **TILA Payoff Class** she seeks to represent. The Named Plaintiff (i) feels that she has been wronged, (ii) wishes to obtain redress of the wrong, and (iii) wants Defendants stopped from enriching themselves from illegal fees or otherwise perpetrating similar wrongs on others.

45.     The **Inspection Class** and **TILA Payoff Class** members have suffered damages, losses, and harm similar those sustained by the Named Plaintiff and described above.

## VI.    CAUSES OF ACTION

### COUNT I – TILA – CLASS CLAIM
**(Plaintiff v. All Defendants on behalf of the TILA PAYOFF CLASS and the INSPECTION FEES CLASS)**

46.     Plaintiff incorporates all prior paragraphs herein.

47.     Named Plaintiff's and the **Inspection Class** and **Payoff Class** member's mortgages were consumer credit plans secured by their principal dwellings, and were subject to the disclosure requirements of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

48.     Springleaf 2013-2 is a "creditor" as defined by the Truth in Lending Act (TILA) because it owned Named Plaintiff's and certain of the **TILA Payoff Class** members' notes and mortgages and changed the terms of that mortgages through its authorized mortgage servicer SPS by adding unlawful fees to the loans of the Named Plaintiff and **TILA Payoff Class** members which created new mortgage obligations, of which Springleaf 2013-2 was the creditor.

49.     When Springleaf 2013-2, by and through its servicing agents including SPS, added the unauthorized property inspection fees to the outstanding principal amount of Named Plaintiff's and **Inspection Class** and **Payoff Class** members' loans, new debt obligations were created, requiring a new set of disclosures showing the amount of the property inspection fees (i.e. finance charges) and all components thereof, including any kickbacks or non-bona-fide sums actually incurred. However, neither Springleaf 2013-2, SPS, nor any other Springleaf 2013-2 servicer provided the Named Plaintiff or the **Inspection Class** and **Payoff Class** members with

a new set of disclosures when the unauthorized property inspection fees were added to their mortgage accounts.

50.    Springleaf 2013-2, directly and indirectly through its authorized agents like SPS, was required to accurately and fully disclose the terms of the legal obligations between it and the Named Plaintiff and the **Inspection Class** and **TILA Payoff Class** members. 12 C.F.R. § 226.17(c).

51.    Named Plaintiff's TILA claim is timely because Springleaf 2013-2, through SPS, added property inspection charges to Named Plaintiff's account on a regular basis but did not disclose that it was doing so to her until several months ago as discussed *supra*. The first time this occurred was also less than twelve months ago.  In other words SPS and Springleaf 2013-2 concealed their actions from the Named Plaintiff and the **TILA Payoff Class** members.

52.    Springleaf 2013-2, through SPS, also failed to provide the Named Plaintiff and the **TILA Payoff Class** members with an accurate payoff balance, as required by 15 U.S.C.A. § 1639g, since the statement they provided demanded property inspection fees which are not permitted to be charged.

53.    Named Plaintiff and the **TILA Payoff Class** members have been injured and have suffered monetary losses arising from USB's violations of the TILA through the acts of its servicing agents including SPS.  These losses include the assessment of fees not permitted on their mortgage accounts, diversion of their bona fide payment sums on their accounts to these illegal inspection fees, increased interest they will now pay over the course of their loan by having these sums added to their principal balances, and damage resulting from the failure of receiving accurate information Congress deemed material and necessary in circumstances like those described herein.

## COUNT II – BREACH OF CONTRACT – CLASS CLAIM
### (Plaintiff v. All Defendants on behalf of the
### INSPECTION FEES CLASS)

54.     Plaintiff incorporates all prior paragraphs herein.

55.     Defendants have materially breached the terms of the Named Plaintiff's and Inspection Class member's notes and mortgages (and deeds of trusts) by charging inspection costs and fees against the mortgage accounts of the Named Plaintiffs and Inspection Class member's loan accounts when (i) there had been no breach of the covenants and agreements in the Note and Mortgage entered into by the person and the person was  were current on his/her mortgage accounts; (ii) there was no legal proceeding involving the person's property that affected SPS' and Springleaf 2013-2's interests in the property, or (iii) the property was not abandoned.

56.     Plaintiffs have suffered damages as a result of the Defendants' breach of contract in the form of sums now claimed due an collected from them by the Defendants related to unauthorized inspection fees and costs.

## COUNT III – UNJUST ENRICHMENT – CLASS CLAIM
### (Plaintiff v. Defendant SPS on behalf of the
### INSPECTION FEES CLASS Only)

57.     Plaintiff incorporates all prior paragraphs herein.

58.     Defendant SPS was not entitled to receive any benefit (including profits) or payments from the Named Plaintiff and **State Law Class** members as a result of any so-called property inspection fees or preservation fees assessed the accounts of the Named Plaintiff and the **Inspection Fees Class** members.

59.     At all times relevant and material to this action in the four (4) years before the commencement of this action, SPS has known or should have known that is was not permitted to

claim it was entitled to access or collect inspection fees from the Named Plaintiff and the **Inspection Fees Class** members' mortgage accounts since (i) there had been no breach of the covenants and agreements in the Note and Mortgage entered into by the Plaintiff and the Inspection Fees Class members since they were current on his/her mortgage accounts; (ii) there was no legal proceeding involving the person's property that affected SPS' or the mortgage loan owners' interests in the related properties, or (iii) the related properties were not abandoned.

60.    Due to its knowledge, as described above, SPS had an appreciation that it was not entitled to receive the benefits it was collecting from the Named Plaintiff and **Inspection Fees Class** members that flow from the property inspection fees it assessed on their accounts.

61.    The acceptance and retention by SPS of any sums received as a result of the illegal property inspection fees charged by it against the Named Plaintiff's and Inspection Fees Class member accounts under such circumstances is inequitable since SPS did not have the legal right to even demand or collect such payments in the first instance in the manner it sought to collect them—this conclusion is just and proper even though SPS might have otherwise collected the alleged fees from another but not the borrower.

62.    The amounts accepted and charged by SPS from the Named Plaintiff and the **Inspection Fees Class** members are liquidated amounts.

63.    As a result of SPS' collection of improper inspection fees from the Named Plaintiff and the Inspection Fees Class members not lawfully due, SPS has been unjustly enriched.

## COUNT IV – RESPA – INDIVIDUAL CLAIM
### (Plaintiff v. Defendant SPS)

64.    Plaintiff incorporates all prior paragraphs herein.

- 14 -

65.     Plaintiff sent to SPS qualified written requests as defined in 12 U.S.C. §2605 and Reg. X which included the following willful violations, by example only and without limitation:

a)  By failing to make appropriate corrections in the Plaintiff's account and transmit written notification of such correction to the Plaintiff (12 U.S.C. §2605(e)(2)(A));

b)  By failing to provide the Plaintiff with a written explanation or clarification that includes a statement of the reasons that SPS believed the Plaintiff's account to be correct and the name and telephone number of an individual employed by SPS who could provide assistance to the Plaintiff (12 U.S.C. §2605(e)(2)(B));

c)  By failing to provide the Plaintiff with a written explanation or clarification that included the information requested by the Plaintiff or an explanation of why the information requested was unavailable or could not be obtained by SPS and the name and telephone number of an individual employed by SPS who could provide assistance to the Plaintiff (12 U.S.C. §2605(e)(2)(C));

d)  By continuing to report a derogatory payment history to the consumer reporting agency while a response to the qualified written request was due and pending.

e)  Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower. 12 CFR 1024.35(b)(5);

f)  Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3), 12 CFR 1024.35(b)(6).

66.     As a direct and proximate result of the aforesaid violations of the RESPA by SPS, Plaintiff suffered damage to her credit rating, frustration, aggravation, lost time and energy, and severe emotional distress.

- 15 -

67.     SPS' abusive servicing practices towards Plaintiff in violation of RESPA are part of a pattern and practice regarding such conduct entitling plaintiff to statutory damages.

## JURY DEMAND

Plaintiff demands trial by jury.

## PRAYER FOR DAMAGES

Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A. For Named Plaintiff, **Inspection Class** Members, and **TILA Payoff Class** Members against both Defendants:

    1. Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Inspection Class** and **TILA Payoff Class** members described herein;

    2. Grant a money judgment in favor of the Named Plaintiff and the **Inspection Class** and **TILA Payoff Class** members for violations of TILA, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain directly related to the improper assessment of inspection fees and costs by Defendants against the Named Plaintiff, **Inspection Class**, and **TILA Payoff Class** members' mortgage loan accounts by Defendants against the Named Plaintiff and **TILA Class** members, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

    3. Grant a further money judgment for statutory damages to the Named Plaintiff and the **TILA Payoff Class** members equal to $1,000,000.00 or 1% of

Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2);

4. Grant a further money judgment for statutory damages to the Named Plaintiff and the **Inspection Class** members equal to $1,000,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2);

5. Award reasonable attorney's fees, litigation expenses and costs pursuant to 15 U.S.C. § 1640(a)(3);

B. For Named Plaintiff, **Inspection Class** Members, and **TILA Payoff Class** Members against both Defendants:

1. Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Inspection Class** members described herein;

2. Grant a money judgment in favor of the Named Plaintiff and the **Inspection Class** members for the Defendants' breach of contract, the amount sought on behalf of the class is in excess of $75,000.00;

3. Award reasonable attorney's fees, litigation expenses and costs; and

4. Provide such other or further relief as the Court deems appropriate.

C. For Named Plaintiff and the Inspection Fees Class Members against Defendant SPS:

1. Certify this case as a class action with the Named Plaintiff as class representative and her attorneys as class counsel on behalf of the **Inspection Class** members described herein;

2. Grant a money judgment in favor of the Named Plaintiff and the **Inspection Class** members in an amount in excess of $75,000.00 for restitutionary

- 17 -

damages to prevent SPS' unjust enrichment pursuant to *Umbelina v. Adams*, 34 A.3d 151, 161 (2011);

3. Award reasonable attorney's fees, litigation expenses and costs; and

4. Provide such other or further relief as the Court deems appropriate.

D. For Plaintiff against SPS for violation of RESPA:

1. Actual damages including overcharges and emotional distress, including the distress and fear caused by threatened foreclosure on her home, pursuant to 12 U.S.C. § 2605(f)(1) against defendants;

2. Statutory damages of $2,000 per violation pursuant to 12 U.S.C. § 2605(f)(1) against defendants;

3. Costs and reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f) (3) against defendants;

4. Provide such other or further relief as the Court deems appropriate.

Dated: Feb. 16, 2018

Robert P. Cocco, P.C.
Attorney for Plaintiff
By:  Robert P. Cocco, Esquire
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
(215) 351-0200
rcocco@rcn.com

Attorney for Plaintiff